UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVITA INC.,

    *Plaintiff*,

v.

VIRGINIA MASON MEMORIAL HOSPITAL, f/k/a YAKIMA VALLEY MEMORIAL HOSPITAL, et al.,

    *Defendants*.

CASE NO. 2:19-cv-302-BJR

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

## I. INTRODUCTION

Established in 1965 as part of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, Medicare is a federally funded medical insurance program for the elderly, disabled, and individuals with end-stage renal disease ("ESRD"). For many years, Medicare served as the primary payer of healthcare costs for Medicare eligible individuals regardless of whether these individuals were also covered by privately-funded health insurance, but in 1980 Congress enacted the Medicare Secondary Payer Act ("MSPA"), 42 U.S.C. §1395y(b), to curb the impact of skyrocketing healthcare costs on the federal fisc. MSPA inverted the relationship between Medicare and

1

privately-funded health insurance by making Medicare secondary to any primary plan obligated to pay a Medicare recipient's medical expenses. 42 U.S.C. § 1395y(b)(2)(A). In other words, when both Medicare and a private plan would cover a Medicare beneficiary's expenses, MSPA makes Medicare the "secondary" payer and the private plan the "primary" payer.

With respect to individuals in ESRD, specifically, MSPA is the secondary payer to privately-funded group health plans for a "coordination period"—a period of up to 30 consecutive months that begins the month in which the individual became eligible for Medicare based on ESRD. During this time, the individual can choose to have the privately-funded group health plan remain the primary payer or switch to Medicare as the primary payer. MSPA forbids the privately-funded group plan from "taking into account" an individual's ESRD diagnosis or "differentiating" in the benefits offered to that individual during this 30-month coordination period.

Plaintiff DaVita Inc. ("Plaintiff") is a medical facility that provides kidney care, including dialysis treatment, for individuals with kidney disease, including at least one individual ("Patient 1") who is a beneficiary of a privately-funded group health insurance plan ("the Plan") offered by Virginia Mason Memorial Hospital f/k/a Yakima Valley Memorial Hospital ("the Hospital") to its employees. Plaintiff instituted this lawsuit in May 2019, alleging that the Plan provides reduced benefits to Medicare-eligible ESRD patients and reimburses at a lower rate services provided to such patients in violation of MSPA. Plaintiff further alleges that as a result of these violations, the Plan underpaid Plaintiff for its services to Patient 1 by at least $1.7 million. Plaintiff brings this action against the Plan and the Hospital (collectively "Defendants") for double damages pursuant to MSPA's "private cause of action" at § 1395y(b)(3)(A).

Currently before the Court is Defendants' motion to dismiss Plaintiff's complaint for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 18. Plaintiff opposes the motion. Dkt. No. 22. Having reviewed the motion, the opposition thereto, the record of the case, and the relevant legal authorities, the Court will grant the motion. The reasoning for the Court's decision follows.

## II.   BACKGROUND

The Plan at issue in this lawsuit is an employee welfare benefit plan governed by ERISA. Its purpose is to provide health and medical benefits to the Hospital's employees. According to the complaint, the Plan operates like most privately-funded group health insurance plans in that it offers different levels of coverage based on whether services are rendered by in- or out-of-network providers. Dkt. No. 1 at ¶ 24. The Plan reimburses providers for those services based on contractually agreed upon fee schedules. *Id*. at ¶ 26.

However, Plaintiff alleges that the Plan places services provided to ESRD Medicare-eligible individuals in "an entirely separate" category with a significantly "lower[] payment regime." *Id*. at ¶ 27. According to Plaintiff, instead of paying for ESRD Medicare-eligible services according to the contractually agreed upon fee schedules, the Plan "pay[s] claims for ESRD services at 125% of the then current Medicare allowable for ESRD services." *Id*. Plaintiff claims that this rate is significantly "lower than the amount the Plan pays for exactly the same services before a patient becomes Medicare eligible because of ESRD." *Id*. at ¶ 28. Therefore, Plaintiff argues, the Plan violates both the MSPA's prohibition against "taking into account" an ESRD patient's Medicare eligibility and its admonishment that a private insurer "not differentiate" in the benefits it provides to individuals in ESRD.

3

As stated above, Plaintiff claims that it provides dialysis services to Patient 1, an ESRD Medicare-eligible individual covered by the Plan. According to Plaintiff, it treated Patient 1 for ESRD for three months before Patient 1 became Medicare eligible due to the ESRD diagnosis. Plaintiff alleges that during those three months, the Plan reimbursed Plaintiff for its services according to the pre-arranged fee schedule. However, at the end of the three months (*i.e.*, once Patient 1 became eligible for Medicare due to the ESRD), Plaintiff alleges that the Plan began reimbursing it at the reduced Medicare-based rate. Plaintiff claims that the Plan continued to reimburse it at this reduced rate for the next 20 months until Patient 1 "switched from the Plan to Medicare for primary coverage" of his treatment. *Id.* at ¶ 36. As a result, Plaintiff alleges, it was underpaid for its services to Patient 1 by "at least $1.7 million". *Id.* at ¶ 35.

## III. STANDARD OF REVIEW

In considering a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has alleged sufficient facts to state a claim for relief which is "plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. 556). In making this assessment, the court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). The court is not, however, bound to accept the plaintiff's legal conclusions. *Iqbal*, 129 S.Ct. at 1949–50. While detailed factual

4

allegations are not necessary, the plaintiff must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

## IV. DISCUSSION

As stated above, Plaintiff brings this action against Defendants alleging a violation of MSPA based on Plaintiff's dialysis services to Patient 1 who is a beneficiary of the Plan and is Medicare-eligible based on an ESRD diagnosis. Plaintiff alleges that Defendants have "blatantly violated their duties to provide unbiased coverage to patients who have [ESRD]" by "tak[ing] into account" an ESRD patient's Medicare eligibility in shaping [the Plan's] benefits" and by "differentiat[ing] in the benefits [the Plan] provides between individuals having [ESRD] and other individuals covered by [the Plan] on the basis of the existence of [ESRD]." Dkt. No. 22 at 2. Plaintiff alleges that as a result of Defendants' MSPA violations, it was underpaid by at least $1.7 million for the services it provided to Patient 1 and seeks double damages pursuant to the MSPA's private cause of action provision.

Defendants move to dismiss the complaint on three grounds. First, they allege that the complaint fails to state a claim on which relief can be granted because the complaint does not allege that the Plan failed to pay Plaintiff when the Plan was the primary payer or that Medicare ever paid anything during the 20 months that Plan was the primary payer. Second, Defendants allege that the Plan specifically provides that a provider of ESRD services may contract with the Plan for a higher reimbursement rate, but Plaintiff failed to pursue this available administrative remedy. Lastly, Defendants argue that Plaintiff's claim is in essence a claim for benefits under

ERISA based on assignment from Patient 1 and Plaintiff has failed to exhaust the Plan's administrative remedies under ERISA.

### A. Whether Plaintiff Has Stated a Claim under MSPA

Defendants argues that Plaintiff has failed to state a claim on which relief can be granted because MSPA's private cause of action is available only when Medicare has improperly paid a claim for which it is not the primary insurer. Here, Defendants argue, Plaintiff does not allege that Medicare improperly paid for Patient 1's services during the 20 months that the Plan was the primary insurer; rather, Plaintiff argues that the Plan did not pay Plaintiff enough for its services. Indeed, Defendants argue, the complaint does not allege that Medicare made any payments during the 20 months that the Plan was the primary payer. According to Defendants, Plaintiff's failure to allege that Medicare made any primary payments while it was the secondary payer is fatal to Plaintiff's MSPA claim under § 1395y(b)(3).

Plaintiff counters the plain language of § 1395y(b)(3) does not require that Medicare make a primary payment as a secondary payer in order to maintain a private cause of action under MSPA. Instead, Plaintiff argues, this Court should conclude that MSPA permits a suit any time a private plan "fails to meet its payment obligations under [] MSPA." Dkt. No. 22 at 11. Alternatively, Plaintiff argues that Medicare was forced to improperly bear the primary cost of Patient 1's treatment because Patient 1 dropped the Plan in favor of Medicare with ten months remaining in the coordination period, making Medicare the primary payer 10 months earlier than it should have been (recall that under the MSPA, a patient with private group insurance who becomes ESRD Medicare-eligible may opt to remain with the private insurance for up to 30 months after becoming eligible for Medicare). Plaintiff's charge that Defendants' actions in "taking into account" and "differentiating" the amount of reimbursement the Plan will make with

6

respect to services provided to an ESRD Medicare-eligible individual "is a textbook violation" of MSPA, whose principle purpose is to "prevent[] health plans from taking steps to prematurely shift ESRD patients' medical costs to Medicare." *Id*. at 7.

The Court agrees with Defendants—and every other court that has addressed this issue—that the private cause of action under MSPA only applies when a primary insurer has failed to make a payment and thus, Medicare, as the secondary payer, must step in and make a conditional payment. The relevant provision of MSPA states:

> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

42 U.S.C. § 1395y(b)(3)(A). Paragraph (1) creates the rules regarding privately-funded group health plans, including the prohibition against such plans "taking into account" an individual's ESRD-based Medicare-eligibility and "differentiating" benefits offered to such individuals. § 1395y(b)(1)(C)(i)-(ii). Paragraph (2)(A) prohibits Medicare from making a payment where "payment has been made or can reasonably be expected to be made" by a primary plan, except that Medicare is authorized to make a conditional payment where a primary plan fails to pay a benefit. § 1395y(b)(2)(A)-(B).

Courts interpreting MSPA's private cause of action—including the Ninth Circuit—have concluded that it is intended to allow private parties to "vindicate wrongs occasioned" when a primary payer fails to make a payment and Medicare has to step in and make a conditional payment. *Parra v. PacifiCare of Arizona, Inc*., 715 F.3d 1146, 1154-55 (9th Cir. 2013); *see also*, *Woods v. Empire Health Choice, Inc*., 574 F.3d 92, 101 (2d Cir. 2009) (Under the MSPA's private enforcement mechanism, "individuals whose medical bills are improperly denied by insurers and instead paid by Medicare," can seek double damages on the government's behalf,

"and the government is subrogated to the right of the private citizen for the recovery of such funds"); *Bio-Medical Applications of Georgia, Inc., v. City of Dalton, Georgia*, 685 F. Supp. 2d 1321, 1332 (N.D. Ga. 2009) ("[T]he purpose of the private cause of action is to save the government money by giving private citizens incentive to recover funds erroneously paid by Medicare … .").

Given this, "[c]ourts unanimously agree that to sustain a 'double-damages' claim pursuant to [the MSPA's private cause of action provision], 'Medicare must have *actually* made payments … when the primary insurer' was 'responsible' for paying the benefits at issue." *River City Fraternal Order of Police Lodge 614, Inc. v. Kentucky Retirement Systems*, 375 F. Supp. 3d 748, 765 (E.D. Ken. 2019) (emphasis in original); *see also*, Humana Medical Plan, Inc. v. Western Heritage Insurance Company*, 832 F.3d 1229, 1239 (11th Cir. 2016) ("The MSP[A] private cause of action permits an award of double damages when a primary plan fails to provide for primary payment or appropriate reimbursement."); *Mason v. American Tobacco Co.*, 346 F.3d 36, 38 (2d Cir. 2003) (the private right of action under MSPA allows plaintiffs to proceed against a primary plan when that plan has "wrongly denied them payment for health care that has been paid for by Medicare"); *Glatthorn v. Independence Blue Cross*, 34 Fed. Appx. 420, 422 (3d Cir. 2002) (affirming dismissal of MSPA claim because plaintiff "did not allege that Medicare paid any amount toward their medical bills, let alone an amount requiring reimbursement by [the primary insurer]"); *Bio-Medical*, 685 F. Supp. 2d at 1332 (quoting *Leggette v. B.V. Hedrick Gravel & Sand Co.*, 2006 WL 680906. *11 (W.D.N.C. May 24, 2006) ("MSP[A] 'double damages' claim may be maintained only where Medicare has, in fact, paid claims that a primary insurer should have, but refused, to pay."); *Hapeville Dialysis Center, LLC v. City of Atlanta, Ga.*, 2013 WL 831635, *3 (N.D. Ga. March 5, 2013) ("The Court is persuaded that to sustain a

private cause of action under the MSPA, the complaint must allege that payment was made by Medicare."); *Geer v. Amex Assurance Co.*, 2010 WL 2681160, *4 (E.D. Mich. July 6, 2010) (same); *Pachaly v. Benefits Admin. Committee Unilever U.S. Inc.*, 2013 WL 17993, *3 (D. Conn. Jan. 16, 2013) (same).

Here, there is no allegation that the Plan failed to make a payment to Plaintiff during the 20 months that it was the primary insurer for Patient 1's services and, as such, Medicare had to step in and make a payment. Indeed, there is no allegation that Medicare made a payment at all during those 20 months. Instead, Plaintiff concedes that the Plan paid it for its services but complains that the rate at which the Plan reimbursed it during those 20 months was too low. Simply put, this is a billing dispute between Plaintiff and the Plan and a billing dispute does not give rise to a private cause of action under MSPA. *Nat'l Renal Alliance, LLC v. Blue Cross & Blue Shield of Ga., Inc.*, 598 F. Supp. 2d 1344, 1355 (N.D. Ga. 2009) ("Plaintiff's proposed theory of damages is the difference between the cost of the service and the rate of payment set by the provider. This calculation, however, has no impact on Medicare. The damages provided for in [MSPA's private cause of action] simply do not fit the situation here. Congress could not have intended for a service provider to receive double recovery when of the recovery is supposed to go to Medicare."). Therefore, Plaintiff cannot maintain its MSPA claim based on the 20 months that the Plan was the primary insurer for Patient 1's ESRD services.

As stated above, in the event this Court concludes that payment by Medicare is a prerequisite to state a private cause of action under MSPA—as this Court does conclude—then Plaintiff argues that Medicare has made the requisite payment because Patient 1 switched to Medicare as the primary insurer 10 months before the coordination period expired. Stated differently, Plaintiff claims that the Plan's discriminatory actions against Patient 1 in the form of

9

decreased benefits and covered services forced Patient 1 to switch to Medicare before the 30-month coordination period expired and, thereby, prematurely shifted the cost of Patient 1's ESRD-related services onto the federal fisc.

Plaintiff's argument again runs afoul of the plain language of MSPA's private cause of action provision. This is because MSPA's private cause of action only comes into play when a primary insurer wrongfully fails to make a payment thereby forcing Medicare as the secondary payer to make a conditional payment in the primary payer's stead. However, here, once Patient 1 switched to Medicare, Medicare, not the Plan, became the primary payer. Therefore, any payments Medicare made towards Patient 1's ESRD services during that 10-month period were Medicare's responsibility as the primary payer and there is no basis for recovering such payments under MSPA's private cause of action provision.

## V. CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS Defendants' motion to dismiss and DISMISSES Plaintiff's complaint based on MSPA's private cause of action as a matter of law for failure to state a claim on which relief can be granted.[1]

Dated this 16th day of July 2019.

Barbara Jacobs Rothstein
U.S. District Court Judge

---

[1] Because this Court concludes that Plaintiff's claim must be dismissed as a matter of law, it is not necessary for the Court to address Defendants' remaining arguments.