HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVITA INC., <br><br> Plaintiff, <br><br> v. <br><br> VIRGINIA MASON MEMORIAL HOSPITAL, f/k/a YAKIMA VALLEY MEMORIAL HOSPITAL and YAKIMA VALLEY MEMORIAL HOSPITAL EMPLOYEE HEALTH CARE PLAN, <br><br> Defendants. | Case NO. 2:19-cv-302 <br><br> **CONSENT DECREE** |

## INTRODUCTION

1. Plaintiff DaVita Inc. ("DaVita") filed this lawsuit against Defendants Yakima Valley Memorial Hospital, f/k/a/ Virginia Mason Memorial Hospital (the "Hospital") and Yakima Valley Memorial Hospital Employee Health Care Plan ("Yakima Valley Plan" or "Plan") (collectively, the "Parties") on March 1, 2019, pursuant to section 42 U.S.C. § 1395y(b)(3)(A).

2. The Parties desire to avoid further litigation. To this end, the Parties agree to enter into a settlement agreement and stipulate to the entry of this Consent Decree by the Court.

## PROCEDURAL HISTORY

3. On March 1, 2019, DaVita brought this action alleging that Defendants violated the Medicare as Secondary Payer Act ("MSPA") by paying reduced amounts based on Medicare eligibility for services provided by DaVita to a beneficiary of the Yakima Valley Plan (the "Beneficiary").

4. On April 16, 2019, Defendants moved to dismiss this action, raising various bases for its claim of dismissal.

5. On July 16, 2019, the Court dismissed the action, holding that a private cause of action under the MSPA is available only when Medicare has made a payment.

6. On August 14, 2019, DaVita filed a Notice of Appeal to the Ninth Circuit.

7. On November 24, 2020, the United States Court of Appeals for the Ninth Circuit affirmed in part, vacated in part, and remanded the case, holding that payment by Medicare is not a prerequisite to a private cause of action and acknowledging that a plan's reduction of payments based expressly on the Beneficiary's Medicare eligibility violates the MSPA. *DaVita Inc., v. Va. Mason Mem'l Hosp.*, No. 2:19-cv-00302-BJR (9th Cir. Nov. 24, 2020).

8. DaVita alleges that as a result of Defendants' MSPA violations, it has been damaged by more than $1 million and is entitled to double damages pursuant to the MSPA's private cause of action provision.

## STIPULATION OF FACTS

9. Dialysis is a life-sustaining treatment for individuals with end-stage renal disease ("ESRD"), also known as kidney failure. When a person suffers from ESRD, their kidneys no longer function well enough for the individual to survive without dialysis or a kidney transplant.

10. Individuals with ESRD become eligible for Medicare after three months of dialysis treatment. When both Medicare and another insurer have independent obligations to pay for dialysis, the primary and secondary payer is determined pursuant to the MSPA, 42 U.S.C. § 1395y(b). The MSPA forbids plans from considering an ESRD patient's eligibility for Medicare during the first thirty months of Medicare eligibility. 42 U.S.C. § 1395y(b)(1)(C).

11. The Hospital administers its own group health plan, the Yakima Valley Plan, which authorizes payments to dialysis providers. The Hospital consulted a healthcare cost-containment advisor with respect to the Plan. Such advisor suggested certain cost-containment measures, including one related to dialysis services, which was at issue in this litigation.

12. With respect to dialysis services, in 2016–2019, the Plan reduced the reimbursement amount for ESRD dialysis treatments based on the member's eligibility for Medicare coverage. The modified reimbursement amount, though higher than Medicare's reimbursement rate, was lower than the usual and customary rates paid to both in-network and out-of-network dialysis providers.

13. DaVita provides dialysis treatment to patients suffering from ESRD, including to the Beneficiary under the Yakima Valley Plan. For the first three months of the Beneficiary's dialysis services, Defendants reimbursed DaVita based on a percentage of the billed rate. When the Beneficiary became eligible for Medicare in month four, however, Defendants reduced their rate of payment to DaVita pursuant to the above-referenced Plan provision. Defendants made this reduction in payment while the Plan was still the Beneficiary's primary insurance and prior to the expiration of the MSPA's statutorily mandated 30-month period.

14. Defendants paid DaVita per the reduced payment rate for 20 months, at which point the Beneficiary dropped their coverage under the Plan. During those 20 months, because

Defendants paid DaVita at a rate above the Medicare rate, Medicare paid nothing for the dialysis services. The Ninth Circuit determined that a plan's reduction of payments based expressly on the Beneficiary's Medicare eligibility does not comply with the MSPA.

15. Defendants subsequently revised their Plan during the pendency of this litigation. As of the Effective Date of the Settlement Agreement, Defendants further agree, in accordance with the terms of the Settlement Agreement, to revise their Plan to eliminate any terms that limit the number of ESRD dialysis treatments available to members during the MSPA's statutorily mandated 30-month waiting period or that in any way condition the availability of ESRD dialysis treatments, or the reimbursement methodology for ESRD dialysis treatments, based on the number of ESRD dialysis treatments received by a member. For the avoidance of doubt, as of the Effective Date, Defendants expressly agree to eliminate the following language, or any comparable language, from their Plan: "Once the member receives 35 treatments, the Plan will reimburse dialysis claims at 125% of the then-current Medicare allowable rate for dialysis treatment."

**SETTLEMENT SCOPE**

16. This Consent Decree is a final judgment binding on all the Parties, resolving all of DaVita's allegations against Defendants in this action and any action that could have been brought by DaVita on similar claims relating to the provision of dialysis treatments to Plan participants through the Effective Date of the Settlement Agreement.

17. No waiver, modification, or amendment of any provision of this Consent Decree shall be effective unless made in writing and approved by the Parties to this Decree, and any substantive change, modification or amendment of any provision of this Consent Decree shall also require approval by the Court.

## MONETARY RELIEF

18. Defendants shall pay damages, statutory damages, penalties, costs, and attorneys' fees to DaVita in such amount as set forth pursuant to the terms of a separate and confidential settlement agreement executed by the Parties (the "Settlement Agreement").

## INJUNCTIVE AND OTHER RELIEF

19. Upon the Effective Date of the Settlement Agreement, Defendants hereby agree that Defendants shall not implement, revise, reinstate, administer, or otherwise have in place, offer, or make available to their employees or members any group health plan that conditions ESRD dialysis benefits on Medicare eligibility, whether directly or indirectly, implicitly or explicitly, including without limitation by imposing any terms (i) that modify or adjust how the payment or payment rate is calculated based on whether the patient is eligible for Medicare or (ii) that terminate a member's participation in a plan based on Medicare eligibility prior to expiration of the MSPA's statutorily-mandated 30-month waiting period or the participant's election of Medicare as a primary payer. Defendants agree, in accordance with the terms of the Settlement Agreement, to eliminate any terms in their Plan that limit the number of ESRD dialysis treatments available to members during the MSPA's statutorily mandated 30-month waiting period or that in any way reduce the availability of ESRD dialysis treatments, or the reimbursement amount for ESRD dialysis treatments, based on the number of ESRD dialysis treatments received by a member. For the avoidance of doubt, as of the Effective Date, Defendants expressly agree to eliminate the following language, or any comparable language, from their Plan: "Once the member receives 35 treatments, the Plan will reimburse dialysis claims at 125% of the then-current Medicare allowable rate for dialysis treatment."

# ENFORCEMENT

20. If a Party does not comply with the terms of this Consent Decree, then the prevailing Party shall be entitled to obtain injunctive relief and attorneys' fees in a court of competent jurisdiction for enforcing the terms of this Consent Decree.

# RETENTION OF JURISDICTION

21. This Court retains jurisdiction over this matter while the Consent Decree remains in force.

The signatories for the Parties certify that they are authorized by the party they represent to enter these Stipulations and this Consent Decree.

Dated: September 27, 2021

*/s/ Erin M, Riley*

**KELLER ROHRBACK L.L.P.**

Erin Maura Riley
1201 Third Avenue, Suite 3200
Seattle, WA 98101
T: (206) 623-1900 | F: (206) 623-3384
eriley@kellerrohrback.com

**ARNOLD & PORTER**

Colin O'Brien - *Pro hac vice*
Timothy R. Macdonald - *Pro hac vice*
1144 Fifteenth Street, Suite 3100
Denver, CO 80202-2569
T: (303) 863-2360 | F: (303) 863-2301
colin.obrien@arnoldporter.com
timothy.macdonald@arnoldporter.com

*Attorneys for Plaintiff* DAVITA INC.

*/s/ Richard Birmingham*

**DAVIS WRIGHT TREMAINE**

Christine Hawkins
777 108th Avenue NE, Suite 2300
Bellevue, WA 98004
T: (425) 646-6100
christinehawkins@dwt.com

Richard J. Birmingham
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
T: (206) 757-8145
richbirmingham@dwt.com

*Attorneys for Defendants*
YAKIMA VALLEY MEMORIAL HOSPITAL,
F/K/A VIRGINIA MASON MEMORIAL HOSPITAL

and

YAKIMA VALLEY MEMORIAL HOSPITAL EMPLOYEE HEALTH CARE PLAN

**ORDER**

Having considered the the parties' Joint Stipulation for Entry of Consent Decree and the parties' proposed Consent Decree (Dkt. No. 59), the Court ORDERS that the Consent Decree is hereby approved and entered. The Court retains jurisdiction over this matter for purposes of enforcing the Consent Decree approved herein.

DATED this 4th day of October, 2021.

s/Barbara J. Rothstein<br>
BARBARA J. ROTHSTEIN<br>
United States District Judge